**IN RE: SAMUEL L. JOSEPH, ESQ., Appellant**
**THE PEOPLE OF THE VIRGIN ISLANDS, Plaintiff/Interested Party**
**v.**
**RODNEY E. MILLER, SR., Defendant**

S. Ct. Civil No. 2016-0001

Supreme Court of the Virgin Islands

July 8, 2016

SAMUEL L. JOSEPH, ESQ., St. Thomas, USVI, *Pro se*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(July 8, 2016)

SWAN, *Associate Justice*. Samuel L. Joseph, Esq., Chief Public Defender in the Office of the Territorial Public Defender ("Attorney Joseph"), appeals the Superior Court's orders which involuntarily appointed him to represent the defendant, Rodney E. Miller, Sr. ("Miller"). For the reasons enumerated below, we accept jurisdiction and vacate the orders appointing Attorney Joseph as counsel.

## I. BACKGROUND

The facts germane to the underlying criminal case are undisputed. In 2008, Miller was charged with a litany of offenses, including violations of the Criminally Influenced and Corrupt Organizations Act, 14 V.I.C. § 600 *et seq.* ("CICO"). Miller's trial on these crimes commenced in May 2011, in which he was represented by the law firm of Dudley Clark & Chan, LLP. Following five days of deliberations, the jury was unable to reach a unanimous verdict, which resulted in the trial court declaring a mistrial on June 24, 2011. This Court subsequently upheld the mistrial in *Najawicz v. People*, 58 V.I. 315 (V.I. 2013). In the interim, the Superior Court had permitted Dudley Clark & Chan, LLP to withdraw from representing Miller because he had failed to pay his attorneys' fees.

In September 2012, Miller moved in the Superior Court for the appointment of counsel. The court denied Miller's request because it had not found that Miller was financially unable to afford the services of an attorney. Nevertheless, the court re-examined Miller's application a year later, as he remained unrepresented by counsel. Mindful that Miller's financial resources had largely been depleted, and concerned that the defendants in companion cases could be prejudiced if Miller was compelled to proceed *pro se*, on October 4, 2013 the Superior Court

appointed the Office of the Territorial Public Defender to represent Miller. Pursuant to internal office procedure, Miller's case was assigned to former public defender, Robert Leycock, Esq. ("Attorney Leycock"). Later that month, Attorney Leycock moved the Superior Court to be relieved as counsel, citing a conflict of interest stemming from a familial relationship with a defendant in a companion case. The Superior Court held a hearing on Attorney Leycock's motion two months later, on December 3, 2013. At the hearing, Miller represented to the court that he was amenable to continued representation by the Office of the Territorial Public Defender, provided that no conflict existed. The court did not find an actual conflict of interest, but nevertheless relieved Attorney Leycock from the case because it concluded that there existed a potential for a conflict of interest which warranted Attorney Leycock's withdrawal. The court simultaneously ordered, "Chief Public Defender Samuel Joseph, Esq., is appointed to personally represent Defendant Miller." (JA at 154.) Lastly, the court directed Attorney Joseph to create an "ethical wall" within the Office of the Territorial Public Defender to ensure that Miller received conflict-free representation.

At the beginning of the following year, on January 27 and 28, 2014, Attorney Joseph filed two motions to be relieved as counsel, raising substantially the same two issues. First, Attorney Joseph challenged the legal efficacy of the "ethical wall" which had been ordered by the court. Attorney Joseph argued that members of the Public Defender Administration Board and employees of the Office of the Territorial Public Defender had relationships with related defendants which gave rise to conflicts of interest, and he posited that those conflicts were imputed to the entire office. Attorney Joseph also contended that, under 5 V.I.C. § 3503(a), the Superior Court lacked the requisite authority to select an individual public defender to represent an indigent defendant, adding that such an order was disruptive to the operation processes of the Office of the Territorial Public Defender.

In a memorandum opinion entered on February 27, 2014, the court acknowledged that its practice was to generally refer an indigent defendant to the Office of the Territorial Public Defender and allow the Office to assign an attorney to the case. But, as justification for its decision to assign Attorney Joseph specifically, the court concluded that 5 V.I.C. § 3503(a) did not expressly prohibit the court from selecting a particular attorney from the Office. The court also explained that a

"specific assignment" was necessary, considering the posture of the case. (JA at 125.) The following year, during a pretrial conference on September 8, 2015, the trial court verbally reaffirmed its ruling.

Attorney Joseph subsequently moved the Superior Court to enter a written order or opinion, memorializing its September 8, 2015 ruling. Thereafter, on January 8, 2016, Attorney Joseph filed a notice of appeal of the September 8, 2015 verbal ruling, pursuant to the collateral order doctrine. The Superior Court then entered its memorandum opinion on January 29, 2016. The court reiterated its position that it was not statutorily barred from appointing an individual public defender to represent Miller. Also, for the first time, the court stated that it derived its authority from the statute governing in forma pauperis proceedings, 4 V.I.C. § 513, which provides for the appointment of an attorney for persons unable to hire counsel. To date, no other named party has filed a notice of appearance or otherwise responded to this appeal.

## II. JURISDICTION

Generally, this Court may only hear an appeal from a final judgment, which is defined as "one that ends the litigation on the merits and leaves nothing to do but execute the judgment." *Rojas v. Two/Morrow Ideas Enters., Inc.*, 53 V.I. 684, 691 (V.I. 2010) (quoting *V.I. Gov't Hosp. & Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 279 (V.I. 2008)). However, Attorney Joseph urges us to exercise jurisdiction over this appeal under the collateral order doctrine, which we recently expounded in *In re Holcombe*, 63 V.I. 800 (V.I. 2015).

■ In our appealability determination for collateral orders, the challenged ruling(s) "must conclusively determine the disputed question; resolve an important issue completely separate from the merits of the action; and must be effectively unreviewable on appeal from a final judgment." *Id.* at 815 (quoting *Hard Rock Café v. Lee*, 54 V.I. 622, 628 (V.I. 2011)). We agree with Attorney Joseph that all three factors of the collateral order doctrine analysis are satisfied here, thereby qualifying this matter for immediate appeal.

■ First, the trial court's September 8, 2015 verbal ruling and its concomitant written orders conclusively decided the disputed issue. In its February 27, 2014 memorandum opinion, the Superior Court concluded, "in no way does 5 V.I.C. § 3503(a) prohibit the court from assigning a specific attorney from the Office of the Territorial Public Defender" to

222

represent an indigent defendant, and held that the court is therefore empowered to do so. (JA at 125.) And, the court reiterated this finding in its January 29, 2016 memorandum opinion. We have determined that orders concerning whether an attorney should represent a client satisfy the first factor in the collateral order doctrine. *Id.*; *Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999) ("An order denying counsel's motion to withdraw conclusively determine(s) the disputed question because the only issue is whether . . . counsel . . . will continue his representation.") (internal quotation marks omitted). Second, the question of the trial's authority to select a specific public defender to represent a defendant, as opposed to appointing the Office of the Territorial Public Defender, is entirely separate from the merits of Miller's case, as it has no relevancy to his guilt or innocence. *Holcombe*, 63 V.I. at 816 (collecting cases).

■ The final requirement, effective unreviewability, has also been met. Among the rulings which cannot be reviewed effectively after final judgment are those in which "some particular value of a high order [is] marshaled in support of avoiding a trial." *Will v. Hallock*, 546 U.S. 345, 352-53, 126 S. Ct. 952, 163 L. Ed. 2d 836 (2006). Because this case involves such a value — "honoring the separation of powers" — denying appellate review would "imperil a substantial public interest." *Id.* Further, "a court-appointed attorney who waits until the defendant is convicted or acquitted is unlikely to receive meaningful redress on appeal." *Holcombe*, 63 V.I. at 817. In granting collateral order review in *Holcombe*, we explicated that the third factor will be satisfied when the interest being vindicated on appeal belongs to the attorney rather than the client, and we also recognized the injurious and potentially irreparable nature of forcing an attorney to represent a client against his will. *Id.* at 818 (collecting cases). We arrive at a similar finding here, and deem this issue one which is likely to evade review at the conclusion of the litigation if not addressed at this juncture. Given that all three requirements of the collateral order doctrine have been satisfied, we appropriately exercise jurisdiction over this appeal.

### III. STANDARD OF REVIEW

The standard of review in examining the Superior Court's application of law is plenary, while the trial court's findings of fact are reviewed for clear error. *Martin v. Martin*, 58 V.I. 620, 624-25 (V.I. 2013). Similarly, we exercise plenary review over all issues of statutory construction.

223

*Rennie v. Hess Oil Virgin Islands Corp.*, 62 V.I. 529, 535 (V.I. 2015) (citing *V.I. Conservation Soc'y, Inc. v. Golden Resorts, LLLP*, 55 V.I. 613, 619 (V.I. 2011)).

In his brief, Attorney Joseph informs that Attorney Leycock is no longer employed by the Office of the Territorial Public Defender, and concedes that the conflict-of-interest issue pertaining to Attorney Leycock's representation of Miller is now moot. (Appellant's Br. at 15.) Therefore, we proceed to address the sole remaining issue submitted for this Court's review: whether the Superior Court exceeded its authority by specifically assigning Attorney Joseph to represent Miller in the criminal proceedings attendant to this appeal.

## IV. DISCUSSION

### The Superior Court lacks the authority to assign a specific public defender from the Office of the Territorial Public Defender to represent an indigent defendant.

The crux of Attorney Joseph's argument is that the Superior Court's orders appointing him to represent Miller constituted a usurpation of the legislature's power to delegate authority over the Office of the Territorial Public Defender to the Public Defender Administrative Board. Therefore, Attorney Joseph contends that the Superior Court violated the separation of powers doctrine and seeks the reversal of the court's orders. We agree.

■ ■ The Revised Organic Act — the Virgin Islands' *de facto* constitution — accords governance power over the territory among a legislative branch, an executive branch, and a judicial branch. *Bryan v. Fawkes*, 61 V.I. 201, 212 (V.I. 2014). Axiomatically, therefore, the separation of powers doctrine applies to each branch of our tripartite system of government. *See Gov't of the Virgin Islands v. Durant*, 49 V.I. 366, 375 n.8 (V.I. 2008). Thus, unless expressly provided or incidental to the powers conferred, the legislature exercises neither executive nor judicial power, the executive cannot exercise legislative or judicial power, and the judiciary may not exercise either executive or legislative power. *Fawkes*, 61 V.I. at 212. The United States Supreme Court has elucidated, "[i]t is [the] concern of encroachment and aggrandizement that has animated our separation-of-powers jurisprudence and aroused our vigilance against the 'hydraulic pressure inherent within each of the separate Branches to exceed the outer limits of its power.'" *Mistretta v.*

*United States*, 488 U.S. 361, 382, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989). In cases specifically involving the judicial branch, the Supreme Court has been punctiliously vigilant against two dangers: "first, that the Judicial Branch neither be assigned nor allowed 'tasks that are more properly accomplished by [other] branches,' and, second, that no provision of law 'impermissibly threatens the institutional integrity of the Judicial Branch.' " *Id.* at 383 (internal citations omitted).

█ Historically, the creation of a public defender office or system has been an obligation reserved for and delegated to the legislative branch, "given that it wields the power of the purse." *Holcombe*, 63 V.I. at 828. And, courts of other jurisdictions have routinely cautioned that where the legislature does establish a public defender system, that office operates independent of the judiciary. *See Office of State Attorney for Eleventh Judicial Circuit v. Polites*, 904 So. 2d 527, 533 (Fla. Dist. Ct. App. 2005) (trial court's order directing public defender office to pay for defendant's mental health examination — which had not been requested by the prosecutor or public defender — "violated the separation of powers doctrine because it directed the Office of the Public Defender to spend money appropriated by the legislature."); *Dauphin Cty. Pub. Def.'s Office v. Court of Common Pleas of Dauphin Cty.*, 578 Pa. 59, 849 A.2d 1145, 1151 (2004) (holding that the court lacked authority to dictate to public defender office the income levels above which a defendant would not be considered financially eligible for public defender representation); *Maloney v. Bower*, 113 Ill. 2d 473, 498 N.E.2d 1102, 1104, 101 Ill. Dec. 594 (1986) (the court improperly "enlarge[d] the duties of the office of the public defender beyond what the legislature ha[d] provided" when it appointed the office to represent indigents in civil contempt proceedings where such persons were subject to incarceration); *Pulaski Cty. ex rel. Mears v. Adkisson*, 262 Ark. 636, 560 S.W.2d 222, 223 (1978) (court order determining payment of salaries and expenses for public defender's office was entered "without judicial authority" because "[s]uch action is a legislative and not a judicial function").

Similar to other jurisdictions, the territory's public defender system was established by the Virgin Islands Legislature. Therefore, this Court approaches its analysis with cognizance of the threat of the judiciary invading the province of the legislative branch. We begin with a review of the applicable statutes and their legislative history to ascertain and give effect to the intent of the legislature relating to the structure and operation

of the Office of the Territorial Public Defender and its interplay with the judiciary.

With the revision of title 5, section 3503(a) of the Virgin Islands Code, effective July 1, 1973, the legislature vested the Office of the Territorial Public Defender with the primary responsibility of representing indigent defendants. Subsequently, on October 14, 1986, the legislative branch ascribed oversight of the Office of the Territorial Public Defender to the then Territorial Court, pursuant to 5 V.I.C. § 3521. Act No. 5206, § 106(a) (V.I. Reg. Sess. 1986). Crucially, however, this transfer was subsequently repealed more than a decade later, and the Office of the Territorial Public Defender became governed by the Public Defender Administration Board. Act No. 6270, § 4 (V.I. Reg. Sess. 1998).

The current statute which provides for the services of the Office of the Public Defender reads as follows:

> Every criminal case of misdemeanor in which a penalty of imprisonment may be imposed, and in every case of preliminary investigation on a charge of felony, in which the defendant appears without counsel, in the Superior Court, the court shall advise the defendant that he has a right to be represented by counsel and that counsel will be appointed to represent him if he is financially unable to obtain same. Unless the defendant waives the appointment of counsel, the court, if satisfied from the financial statement filed pursuant to chapter 302 of this title that the defendant is indigent and therefore unable to obtain counsel, *shall refer such defendant to the Office of the Public Defender, which Public Defender shall represent him at every stage of the proceeding against him*; Provided, however, the Court may, when in its judgment the circumstances warrant it, assign other counsel to represent the defendant at every stage of the proceedings.

5 V.I.C. § 3503(a) (emphasis added).

■ This provision is part of an extensive statutory scheme, the current iteration of which governs the Office of the Territorial Public Defender. Title 5, V.I.C. §§ 3520-3528 of the Virgin Islands Code evidence that the Public Defender Administration Board and the Chief Public Defender are charged with all managerial and directorial duties and responsibilities associated with the Office of the Territorial Public Defender, to the exclusion of the judiciary. The Board approves the annual budget for the

Office of the Territorial Public Defender, hears and decides all complaints and grievances of employees, and, upon the recommendation of the Chief Public Defender, is empowered to hire and terminate all personnel and staff. 5 V.I.C. § 3520(b). Also, each Public Defender is appointed by and serves at the will of the Board. 5 V.I.C. § 3522.

■ Careful scrutiny of the applicable statutes reveals that the Chief Public Defender, who is named by the Board, supervises and directs the operation of the Office of the Territorial Public Defender. Notably, the Chief Public Defender recommends to the Board staff and personnel for hiring and termination. 5 V.I.C. § 3520(b). In this role, (s)he also determines the necessity of secretarial, investigative and clerical personnel, and the salaries prescribed for these positions. 5 V.I.C. §§ 3521(a), 3523. The Chief Public Defender's duties also include submitting an annual budget for the Office of the Territorial Public Defender to the legislature, and an annual report to the Board, containing a summary of all cases handled by the Office during the preceding year. 5 V.I.C. §§ 3523, 3525.

In determining the scope of the court's authority under this statutory scheme, we first examine the plain language of the statutes under the assumption that the legislature's intent is manifested through the ordinary meaning of the words chosen. *Sonson v. People*, 59 V.I. 590, 598 (V.I. 2013). Further, the Virgin Islands Legislature instructs that "words and phrases" in the Virgin Islands Code "shall be construed according to the common and approved usage of the English language." 1 V.I.C. § 42; *see also Gonzales v. Carhart*, 550 U.S. 124, 152, 127 S. Ct. 1610, 167 L. Ed. 2d 480 (2007) ("In interpreting statutory texts courts use the ordinary meaning of terms unless context requires a different result."). It is well-established that "[i]f the statutory language is unambiguous and the statutory scheme is coherent and consistent, no further inquiry is needed." *In re L.O.F.*, 62 V.I. 655, 661 (V.I. 2015) (quoting *In re Reynolds*, 60 V.I. 330, 334 (V.I. 2013)); *King v. Burwell*, 576 U.S. ___, 135 S. Ct. 2480, 2483, 192 L. Ed. 2d 483 (2015) ("If the statutory language is plain, we must enforce it according to its terms.") (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251, 130 S. Ct. 2149, 176 L. Ed. 2d 998 (2010)).

■ A plain language reading of 5 V.I.C. § 3503(a) confirms that the legislature empowered the court to appoint the *Office* of the Territorial Public Defender to represent indigent defendants, rather than have a

selection of public defenders at its disposal. And, our thorough parsing of the statutes governing the Office the Territorial Public Defender reveals neither an express nor inferential authority of a judge to assign representation of an indigent defendant to a specific public defender of the court's choosing. It is exceedingly clear that oversight of the Office is not the court's prerogative, but that the legislature intended to create a self-regulating and independent public defender system for the representation of indigent defendants, within which the Chief Public Defender administers the operations of the Office and accounts to the Public Defender Administration Board. A judge's involvement with the functioning of the Office of the Territorial Public Defender is limited, straightforward and unequivocally dictated by statute: "the court, if satisfied . . . that the defendant is indigent and therefore unable to obtain counsel, shall refer such defendant to the Office of the Public Defender." 5 V.I.C. § 3503(a).

■■ ■ With the exception of indigency determinations, the statutes simply do not authorize the court to be involved in the managerial decisions of the Office of the Territorial Public Defender, which includes case assignments to specific attorneys in its employ. *Burnette v. Terrell*, 232 Ill. 2d 522, 905 N.E.2d 816, 826, 328 Ill. Dec. 927 (2009) ("Under the Code, the circuit court has the authority to direct the public defender to represent an indigent defendant . . . . That is, the court appoints the office of the public defender to act as the attorney for an indigent defendant. The court does not appoint an individual assistant public defender."); *State ex rel. Robinson v. Franklin*, 48 S.W.3d 64, 69 (Mo. Ct. App. 2001) ("The circuit court is not charged with the oversight or control of the state public defender system. That authority lies with the Director and the Commission . . . . The statute provides no authority, other than indigency determinations, for the court to be involved in the functions of the system, including assignment of particular counsel to cases. That authority is left to the Director and his representatives.").

Had the legislature intended to enable the Superior Court to choose specific public defenders to represent defendants, as opposed to the Office of the Territorial Public Defender as an entity, it could have easily done so. *See Nguyen v. United States*, 556 F.3d 1244, 1256 (11th Cir. 2009) ("We are not authorized to rewrite, revise, modify, or amend statutory language in the guise of interpreting it."); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992)

228

("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."). The terms of 5 V.I.C. § 3503(a) are plain and this Court will not, under the pretext of statutory construction, read into the statute that which the legislature has not sought fit to include.

Nonetheless, it does not appear that the Superior Court considers 5 V.I.C. § 3503(a) ambiguous. Instead, the court's position in defending its authority to appoint Attorney Joseph is that the statute contains no language *prohibiting* a judge from assigning a specific attorney from the Office of the Territorial Public Defender. But an absence of restrictive statutory language does not imply that a judicial action is permitted; one is not the functional equivalent of the other. As the United States Third Circuit Court of Appeals has articulated, "the lack of an affirmative prohibition of an activity does not mean it is *affirmatively* authorized by law." *Nat'l Collegiate Athletic Ass'n v. Governor of New Jersey*, 730 F.3d 208, 232 (3d Cir. 2013); *see West v. Costen*, 558 F. Supp. 564, 582 (W.D. Va. 1983) ("[N]ot prohibited by law" is distinct from "permitted by law." "Permission requires an affirmative authorization, not just indulgent silence."); *see also Ex parte Christopher*, 145 So. 3d 60, 72 (Ala. 2013) (a canon of statutory construction is that courts cannot supply what a statute omits). Accordingly, we are not persuaded by this reasoning of the Superior Court.

In its January 29, 2016 memorandum opinion, the Superior Court goes a step further, and states — for the first time, interestingly — that it derived its authority from the statute governing in forma pauperis proceedings, 4 V.I.C. § 513, and more specifically, section (d).

The statute to which the court refers provides as follows, in pertinent part:

§ 513. Proceedings in forma pauperis
(a) Any court in the Virgin Islands may authorize the commence-ment, prosecution, or defense of any action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs, or security therefor, by a citizen of the United States who makes affidavit that he is unable to pay the fees and costs or to give security therefor. The affidavit shall state the nature of the action, defense, or appeal and affiant's belief that he is entitled to redress.

(d) The court may appoint an attorney to represent any person unable to employ counsel. The court may dismiss the action if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

4 V.I.C. § 513.

Conceivably, the court's logic in referencing this statute is that because 4 V.I.C. § 513(d) uses the word "attorney," which invariably applies to a public defender, the court is empowered to name a public defender of its choice, rather than appoint the Office of the Territorial Public Defender. This reasoning, based on the selective reading of a single word in the statute, is specious on numerous grounds.

We emphasize that in interpreting a statute, "we 'must do our best, bearing in mind the fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.' " *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 611-12 (3d Cir. 2015) (quoting *King*, 576 U.S. ___, 135 S. Ct. at 2492). Accordingly, this Court must not "confine itself to examining a particular statutory provision in isolation." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666, 127 S. Ct. 2518, 168 L. Ed. 2d 467 (2007). Instead, we must "interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole." *Thorpe v. Borough of Thorpe*, 770 F.3d 255, 263 (3d Cir. 2014), *cert. denied sub nom. Sac & Fox Nation of Oklahoma v. Borough of Jim Thorpe, Pa.*, ___ U.S. ___, 136 S. Ct. 84, 193 L. Ed. 2d 207 (2015).

Therefore, while subsection (d) does explicitly allow the court's appointment of an attorney to represent a person unable to employ counsel, this provision must be read within the wider context of 4 V.I.C. § 513, which specifically governs in forma pauperis proceedings. First, the Superior Court's retrospective reliance on this statute is problematic because the record in no way evidences that Miller's trial is an in forma pauperis proceeding. There is no indication that Miller ever moved the court to proceed in forma pauperis, completed an in forma pauperis application, submitted an affidavit in accordance with 4 V.I.C. § 513(a), or otherwise sought to proceed under the statute. And, the Superior Court never granted Miller in forma pauperis status or authorized Miller to proceed under the statute.

■ Most critically, however, the court's reliance on 4 V.I.C. § 513(d) does not diminish the fact that case assignments in the Office of the Territorial Public Defender are not even remotely within the province of the court. We explained the underlying principle in *Fontaine v. People*, 59 V.I. 1004, 1011-12 (V.I. 2013), where we specified that "this Court does not control or administer the Office of the Territorial Public Defender," but that "the Legislature vested such oversight with the Public Defender Administration Board." While the Superior Court would be at liberty to appoint individually named private counsel under 4 V.I.C. § 513, we again remind the court that the Office of the Territorial Public Defender is directed and supervised by a Chief Public Defender, who is beholden to the Board. And, unlike the broader in forma pauperis statute which relates to both civil and criminal matters, the statutes governing the Office of the Territorial Public Defender apply specifically to criminal prosecutions, as the indigent defense system was specially established to comport with the right to counsel under the Sixth Amendment recognized by the United States Supreme Court in *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), and later cases. *See In re Mental Health Ass'n of the Heartland*, 289 Kan. 1209, 221 P.3d 580, 586 (2009) ("It is a cardinal rule of law that statutes complete in themselves, relating to a specific thing, take precedence over general statutes or over other statutes which deal only incidentally with the same question, or which might be construed to relate to it."); *Haynes v. Ottley*, 61 V.I. 547, 561 (V.I. 2014).

■ To hold that the use of the term "attorney" in 4 V.I.C. § 513(d) necessarily means that a judge may select an individual public defender to represent an indigent defendant would render void the entire statutory scheme that regards the Office as an entity controlled by its Board and its Chief Public Defender. Therefore, we reject such an interpretation. *See Keller v. Tavarone*, 262 Neb. 2, 628 N.W.2d 222, 232 (2001) ("In the absence of clear legislative intent, the construction of a statute will not be adopted which has the effect of nullifying another statute."); *Gallaudet Univ. v. Nat'l Soc. of the Daughters of the Am. Revolution*, 117 Md. App. 171, 699 A.2d 531, 545 (1997) ("Whenever possible, one statute should not be read so as to render another statute meaningless.").

Of particular concern to this Court are the practical and legal implications of finding that a judge may hand-pick a public defender and assign him or her to a criminal case. It is not difficult to envision the

longest-practicing litigators in the Office being routinely selected to represent defendants, contravening and nullifying the powers of the Board and the Chief Public Defender and leading to a public defender system essentially controlled by the will of the judiciary.

Even where *this* Court's rules use both the terms "attorney" and "public defender" in discussing appointed counsel on appeal, we have consistently regarded public defender representation as that by the Office, as opposed to a particular public defender of any court's selection. For instance, Virgin Islands Supreme Court Rule 210.3(a)(2) provides:

> (2)　After the filing of a notice of appeal with the Supreme Court, any *attorney* previously appointed by the Superior Court, other than *the Office of the Territorial Public Defender*, may request that the Supreme Court relieve him or her of the representation and instead appoint, as appellate counsel, the Office of the Territorial Public Defender Until and unless the Supreme Court grants such a request, the *attorney* shall continue to represent the defendant on appeal.

(Emphases added). Similarly, Virgin Islands Supreme Court Rule 210.3(b) provides:

> (b)　Appointments by Supreme Court. In those cases in which the Supreme Court makes an appointment in the first instance, *or in which it becomes necessary to appoint a new attorney to represent a litigant on appeal, the Clerk of the Supreme Court shall appoint the Office of the Territorial Public Defender to* represent the litigant.

(Emphases added).

Admittedly, the trial court was justified in being concerned about the history of counsel involved in the representation of Miller, and we acknowledge the Superior Court's emphasis on providing conflict-free representation for Miller. Nevertheless, choosing a specific public defender was not the appropriate solution for addressing the court's concerns, as the order superseded the role of the Chief Public Defender and violated the separation of powers doctrine. *See State ex rel. Robinson*, 48 S.W.3d at 69-70 (while the trial court had a legitimate interest in "break[ing] the chain of continuances made by withdrawing defenders," and ensuring that defendant's case proceeded to trial without further

delays, "[t]he trial court acted in excess of its authority" when it appointed specific public defenders to represent the defendant). It is the Chief Public Defender — and not the court — who possesses statutory managerial authority, and is best positioned to assess the Office's resources and experience of its lawyers, in achieving effective case management.

## V. CONCLUSION

Upon a finding of a defendant's indigence, the Superior Court may appoint the Office of the Territorial Public Defender as counsel. However, the court lacks the statutory authority to order that a specific public defender be assigned to represent a defendant. Accordingly, we vacate the court's orders appointing Attorney Joseph to represent Miller in the underlying criminal proceedings and remand this case so that the Superior Court may appoint the Office of the Territorial Public Defender, leaving the determination as to the specific attorney to be assigned to Miller to be made within the discretion of the Chief Public Defender.