**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**EDWARD P. MCKENZIE, CALFORD CHARLESWELL, SYLVESTER WARNER, and PAUL G. SABERS, Defendants**

Case Nos. ST-15-CR-F418, ST-15-CR-F419, ST-15-CR-F420, ST-15-CR-F421

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

January 30, 2017

GORDON C. RHEA, ESQ., Gordon C. Rhea, P.C., St. Thomas, USVI, *For Paul G. Sabers, Defendant.*

TRESTON MOORE, ESQ., Moore, Dodson, & Russell, P.C., St. Thomas, USVI, *For Edward P. McKenzie, Defendant.*

KWAME O. MOTILEWA, ESQ., SAMUEL L. JOSEPH, ESQ., Chief Territorial Public Defender, St. Thomas, USVI, *For Sylvester Warner, Defendant.*

DARREN JOHN-BAPTISTE, ESQ., The Law Offices of Darren John-Baptiste, St. Thomas, USVI, *For Calford Charleswell, Defendant.*

QUINCY G. MCRAE, ESQ., CLAUDE E. WALKER, ESQ., Attorney General, Virgin Islands Department of Justice, St. Thomas, USVI, *For the People of the Virgin Islands.*

DUNSTON, *Judge*

## MEMORANDUM OPINION

(January 30, 2017)

Pending before the Court is Defendant Sabers' April 12, 2016, Motion to Dismiss Count Twenty-Five of the Information and Defendant Mckenzie's April 15, 2016, Motion to Dismiss Count Four. For the following reasons, Defendants' Motions will be denied.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

On December 16, 2015, an Information was filed against Defendants Edward McKenzie, Calford Charleswell, Sylvester Warner, and Paul Sabers, charging numerous crimes stemming from Defendants' alleged manipulation of the bidding process for real property located at 97 Estate

6

Frydenhoj, St. Thomas, U.S.V.I. at a government-sponsored property-tax auction, including, *inter alia*, conspiracy under the Virgin Islands Criminally Influenced and Corrupt Organizations Act ("CICO") in violation of 14 V.I.C. §§ 605(a), 605(d), 604(e)(15), (16), (19).[1]

On April 12, 2016, and April 15, 2016, Defendant Sabers and Defendant McKenzie respectively moved to dismiss the CICO conspiracy charges, namely Count 25 and Count 4.[2] On July 6, 2016, and August 8, 2016, Defendant Warner filed notices that he was joining Defendants Sabers' and McKenzie's Motions to Dismiss.[3] On August 1, 2016, Defendant Charleswell moved to join "in Co-Defendant's motions . . . as may be applicable to [him,]" which the Court granted by Order entered on August 10, 2016.

In response to Defendants' Motions to Dismiss, the People filed a Motion to Amend the Information on September 1, 2016, seeking, *inter alia*, to add sections separately describing Defendants' alleged "enterprise" and its purpose, and to amend Counts 4, 18, and 25 by asserting that each defendant "was associated with, any enterprise, to conduct or participate directly or indirectly, the affairs of the enterprise through a pattern of criminal activity," modifying the crimes constituting this alleged "pattern of criminal activity," and added Section 605(a) to the other statutory provisions of CICO cited in the initial Information.[4] At a hearing on September 2, 2016, the Court orally granted the People leave to amend[5] but held Defendants' Motions to Dismiss in abeyance, directing Defendants to supplement their arguments by September 19, 2016, with the People to reply by September 30, 2016. On September 15, 2016, Defendant Sabers filed a Response to the Government's Amended Information, while Defendant McKenzie filed a Motion to Dismiss Amended Count Four and a supporting memorandum of law on September 19, 2016. After making an untimely request for an extension,

---

[1] Count 4 against Defendant McKenzie; Count 19 against Defendant Charleswell; Count 21 against Defendant Warner; Count 25 against Defendant Sabers. *See* People's September 1, 2016, Amended Information.

[2] As to Defendant Sabers' Motion to Dismiss, the People responded on July 22, 2016, and on July 29, 2016, Defendant Sabers filed a Motion to Strike the People's untimely opposition.

[3] Def. Warner's July 6, 2016, Joinder of Mots. & August 8, 2016, Joinder of Mot. of Def. Sabers, Case No. ST-15-CR-420.

[4] *See* People's September 1, 2016, Mot. to Amend the Information.

[5] This ruling was memorialized in a written Order entered on September 7, 2016.

the People filed their Brief in Regard to Titles 14 V.I.C. § 604(h) and (j), and, on October 13, 2016.[6]

## STANDARDS

### I. Motion for Extension of Time.

■ "When an act is required or allowed to be done at or within a specified time," Superior Court Rule 10(a)(2) provides "[t]he court for cause shown may at any time in its discretion . . . [o]n motion, permit the act to be done after the expiration of the specified period if the failure to act was the result of excusable neglect." "Excusable neglect is determined by all attendant circumstances that demonstrate a genuine need for an extension of time after the initial specified period."[7]

### II. Motion to Dismiss an Information.

■ A Motion to Dismiss challenging the adequacy of an information is a pretrial motion governed by Superior Court Rule 128(a).[8] In determining the adequacy of an information, Superior Court Rule 123(f) mandates that the Court consider the requirements set forth in FED. R. CRIM. P. 7.[9] To survive a motion to dismiss, FED. R. CRIM. P. 7(c)(1) requires that the information[10] contain:

> a plain, concise and definite written statement of the essential facts constituting the offense charged . . . A count may allege that the means

---

[6] *See* People's October 12, 2016, Mot. for Extension of Time.

[7] *Barshinger v. Legislature of the V.I. of the United States*, 2014 V.I. LEXIS 99, at *7 (V.I. Super. Ct. 2014) (citation omitted).

[8] As permitted by the Supreme Court of the Virgin Islands, the Court reaches this conclusion by looking to federal doctrines developed under FED. R. CRIM. P. 12(b)(3) for guidance. *Tindell v. People of the V.I.*, 56 V.I. 138, 149 n.11 (V.I. 2012) ("To interpret Superior Court Rule 128(a) and determine what constitutes a pre-trial motion, this Court may consider case law interpreting Federal Rule of Criminal Procedure 12, which contains language similar to Superior Court Rule 128(a)") (citing *People v. Todmann*, 53 V.I. 431, 442 n.12 (V.I. 2010)) (other citations omitted). A pretrial motion is governed solely by SUPER. CT. R. 128(a). *Tindell*, 56 V.I. at 149-150 & n.12 (citations omitted).

[9] SUPER. CT. R. 123(f) ("The provisions of Rule 7 of the Federal Rules of Criminal Procedure regarding the Information are incorporated herein").

[10] *People of the Virgin Islands v. Abreu*, 2010 V.I. LEXIS 71, at *8 (V.I. Super. Ct. Oct. 29, 2010) ("In the Virgin Islands, criminal actions are instituted by way of an information, as opposed to the grand jury indictment process") (citing 5 V.I.C. § 3581(a)).

by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count... [the] information must give the official or customary citation of the statute, rule, regulation, or other provision of law which the defendant is alleged to have violated.[11]

■ Consistent with the requirements in FED. R. CRIM. P. 7(c), courts have found that, to sufficiently allege an offense, a charging instrument must: "(1) contain the elements of the offense intended to be charged; (2) sufficiently apprise the defendant of what [he] must be prepared to meet; and (3) allow the defendant to show with accuracy to what extent [he] may plead a former acquittal in the event of a subsequent prosecution."[12] Therefore, "[a]lthough [a]n [information] must allege more than just the essential elements of the offense', . . . '[n]o greater specificity than the statutory language is required so long as there is sufficient factual orientation' to permit a defendant to prepare his defense and invoke double jeopardy."[13]

■ "In considering a defense motion to dismiss an [information], the [trial] court accepts as true the factual allegations set forth in the [information]."[14] "Unless there is a stipulated record, or unless immunity issues are implicated, a pretrial motion to dismiss an [information] is not a permissible vehicle for addressing the sufficiency of the government's evidence."[15]

---

[11] FED. R. CRIM. P. 7(c)(1).

[12] *People of the V.I. v. Whyte*, 62 V.I. 95, 100-101 (Super. Ct. 2015) (citing *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007) (citing *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989)); *see also Gov't of the Virgin Islands v. Moolenaar*, 133 F.3d 246, 248, 39 V.I. 457 (3d Cir. 1998) (applying the above test to charging documents alleging offenses against the Virgin Islands).

[13] *Whyte*, 62 V.I. at 101 (citing *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (quoting *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007)) (internal quotation marks and citation omitted).

[14] *Id.* at 102 (citing *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990)).

[15] *Id.* (citing *United States v. DeLaurentis*, 230 F.3d 659 (3d Cir. 2000)) (other citations omitted).

## ANALYSIS

## I. The People's Motion for Extension of Time.

In moving for an extension of time to file the People's Brief in Regard to Titles 14 V.I.C. § 604(h) and (j), the People's counsel submits that jury selection and a detention hearing in other criminal cases on October 12-13, 2016, preclude him from preparing the People's response.[16] However, the dates of these proceedings are well beyond the original deadline within which the People were to file their Brief on September 30, 2016. Nevertheless, the Court recognizes that Defendants have not moved to strike the People's Brief as untimely[17] and the two week delay did not impact the progress of the judicial proceedings.[18] Considering this and the complexity of the issues involved in Defendants' pending motions, the Court will grant the People the requested extension of time and deem the People's Brief filed as of September 30, 2016, *nunc pro tunc*.

## II. Defendants' Motions to Dismiss the Amended Information.

The Amended Information charges Defendants under CICO with violating 14 V.I.C. §§ 605(a) and 605(d) by "associat[ing] with each other to manipulate the bidding process and in so doing, engaged in numerous criminal acts, including: forgery, obtaining money by false pretenses, conversion of government property, conspiracy, recording false documents, making fraudulent claims upon the Government, larceny, and embezzlement."[19] In their Motions to Dismiss, Defendants argue that the Amended Information contains insufficient facts to allege two essential elements of a CICO conspiracy charge under 14 V.I.C. § 605(a) and (d), namely the existence of an "enterprise" and "pattern of criminal

---

[16] People's October 12, 2016, Mot. for Extension of Time.

[17] *See Destin v. People of the Virgin Islands*, 64 V.I. 465, 469 n. 3 (V.I. 2016) ("Although the Superior Court failed to provide an explanation for considering the defendant's untimely motion, the record reflects that the People did not move to strike Destin's motion as being untimely, and therefore it waived any objection to its timeliness") (citing *Joseph v. People*, 60 V.I. 338, 347 n.7 (V.I. 2013)) (other citation omitted).

[18] *See Fuller v. Browne*, 59 V.I. 948, 954 (V.I. 2013) (internal quotation marks and citations omitted).

[19] People's September 1, 2016, Amended Information.

10

activity."[20] In opposition, the People argue that the Amended Information alleges sufficient facts to satisfy the "enterprise" and "pattern of criminal activity" elements as they are defined under the CICO.[21]

14 V.I.C. § 605 provides:

> (a) It is unlawful for any person employed by, or associated with, any enterprise, as that term is defined herein, to conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of criminal activity.
>
> . . .
>
> (d) It is unlawful for any person to conspire or attempt to violate, either directly or through another or others, the provisions of section 605, subsections (a), (b), and (c).

In turn, 14 V.I.C. § 604 contains the following pertinent definitions:

> (h) "Enterprise" includes any individual, sole proprietorship, partnership, corporation, trust, or other legal entity, or any union, association or group of persons, associated in fact although not a legal entity, and includes illicit as well as licit enterprises and governmental as well as other entities.
>
> . . .
>
> (j) "Pattern of criminal activity" means two or more occasions of conduct
>> (1) that:
>>> (A) constitute criminal activity;
>>> (B) are related to the affairs of the enterprise; and
>>> (C) are not isolated; and
>> (2) where:
>>> (A) at least one of the occasions of conduct occurred after November 9, 1990;
>>> (B) the last of the occasions of conduct occurred within five years of the filing of the action under this chapter, or within

---

[20] *See generally* Def. McKenzie's September 19, 2016, Mem. of Law in Support of Def. McKenzie's Mot. to Dismiss Count Four ("Mem. of Law"); Del Sabers' April 12, 2016, Mot. to Dismiss Count 25 ("Mot. to Dismiss").

[21] *See* People's October 13, 2016, Brief in Regards to Titles 14 V.I.C. § 604(h) and (j) ("Brief").

the relevant period within the Statute of Limitations as provided in section 3541 of Title 5, Virgin Islands Code, if such statutory period shall be greater than five years; and

(C) for the purposes of section 606 [Criminal penalties] of this chapter, but not section 607 [Civil remedies] of this chapter, at least one of the occasions of conduct constituted a felony under the Virgin Islands Code, or, if committed subject to the jurisdiction of the United States, or any state of the United States, would constitute a felony under the Virgin Islands Code if committed in the Territory of the Virgin Islands.

## A. Association-in-fact enterprise under CICO.

 It is undisputed that an "association-in-fact" enterprise constitutes an "enterprise" under CICO and that the Amended Information alleges that Defendants engaged in an "association-in-fact" enterprise.[22] In defining an "association-in-fact" enterprise, Defendants and the People refer to *Boyle v. United States*,[23] where the United States Supreme Court held that an "association-in-fact" under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."[24] According to Defendants, the Amended Information fails to contain sufficient facts necessary to demonstrate the existence of an "association-in-fact" enterprise because "the alleged manipulation of the bidding process had but one, short-lived objective (to transfer a single property to Sabers) and no ascertainable, ongoing structure."[25] In contrast the People argue that the Amended Information makes an adequate showing of the structural features of an "association-in-fact" enterprise by alleging Defendants " 'conspired with Calford Charleswell' (an individual 'who was employed with the Virgin Islands

---

[22] Def. McKenzie's Mem. of Law, p. 8; Der. Sabers' Mot. to Dismiss, pp. 5-7; People's Brief, pp. 4-6.

[23] 556 U.S. 938, 946, 129 S. Ct. 2237, 2244, 173 L. Ed. 2d 1265 (2009).

[24] *Id.*; Def. McKenzie's Mem. of Law, p. 8; Def. Sabers' Mot. to Dismiss, p. 5; People's Brief, p. 6.

[25] Def. McKenzie's Mem. of Law, p. 8; *see* Def. Sabers' Mot. to Dismiss, p. 6.

Office of the Lieutenant Governor'), and others' " for "[t]he purpose of . . . arrang[ing] the fraudulent auction and sale of property at a false bid price that was substantially lower than the highest bid price" and that "[D]efendants knew each other and engaged in several conducts of criminal activity to help the enterprise accomplish its purpose."[26]

 The Amended Information specifically details each Defendant's role in committing these acts and expressly provides the relation each act had to the overall purpose of manipulating the bidding process at a government-sponsored property tax auction of real property located at 97 Estate Frydenhoj, St. Thomas, U.S.V.I. ("the Property").[27] Specifically, the Amended Information alleges, *inter alia*, that:

1) Defendant Charleswell was the Chief Enforcement Officer of the Lt. Governor's Office ("OLG") from July 1, 2012 to September 30, 2013, during which time he was responsible "for conducting tax sale auctions of real property and preparing certificates of purchase for properties sold" at the tax auctions: that Defendant Charleswell abused this position by allowing individuals to take advantage of "[c]ertain procedural changes made by officials at the OLG" and "manipulate the bidding process in a scheme in which the highest bidder purposefully makes a substantially inflated high bid, then fails to post the ten (10%) deposit so that the property would go to another bidder or individual for a substantially low price;"[28]

2) Defendants Charleswell, McKenzie, Warner, and Sabers, engaged in the aforementioned scheme to manipulate the bidding process at the tax auction of the Property on August 30, 2012;[29]

3) Defendant Warner stated "he was asked by someone he knew, but . . . who he could not identify, to bid" on the Property, and that "call histories between Warner and Charleswell shows

---

[26] People's Brief, pp. 6-7.

[27] *See* People's September 1, 2016, Amended Information.

[28] People's September 1, 2016, Amended Information, pp. 2-3.

[29] People's September 1, 2016, Amended Information, p. 2.

13

[sic] Charleswell placing calls to Warner a couple days before and the day after the date of the auction;"[30]

4) Defendant McKenzie bid $75,000 and Defendant Warner, listing himself as Nadine Matthew, bid $60,000, on the Property at the tax auction, but neither intended to pay the deposit once they won the bid;

5) Defendant Charles falsely recorded the bids on the Property on OLG's 123 sheet as stating Defendant McKenzie made the top bid at $75,000, while "JoJo Joseph" made the second bid at $42,000, of which there is no other record, and that Defendant Warner, listed as Nadine Matthew, bid only $10,100;[31]

6) Defendant McKenzie gave his friend Louis Willis "money to pay the $10,000 owed to OLG," and, despite Willis not bidding on the Property, Defendant Charleswell transferred title to the Property to Willis, who then transferred title of the Property to his friend Defendant Sabers in exchange for 5% in Sabers' business "Oasis Cove Marina";[32]

7) Defendant Sabers, who controls and operates "Go Fast Charters, LLC d/b/a Pirate's Cove Marina" ("Go Fast Charters, LLC"), "filed an application for registration of Trade Name Under a Limited liability Company" for "Oasis Cove Marina," listing the mailing address as that of Go Fast Charters, LLC;[33]

8) Sabers sought to acquire the Property because it was adjacent to other properties owned by Sabers, namely, "Parcel numbers 63, 64, 87, and 135 Frydenhoj," and Defendant McKenzie has previously represented Go Fast Charters, LLC, in the permitting process with respect to these properties.[34]

█ The Court agrees with the People that these factual allegations sufficiently apprise Defendants of what they must be prepared to defend against with respect to the CICO charge's "enterprise" element, which is

---

[30] People's September 1, 2016, Amended Information. p. 4.

[31] People's September 1, 2016, Amended Information, p. 3.

[32] People's September 1, 2016, Amended Information, p. 3.

[33] People's September 1, 2016, Amended Information, p. 4.

[34] People's September 1, 2016, Amended Information, pp. 3-4.

all that is required at this stage in the proceedings.[35] Defendants' arguments implicate the sufficiency of the People's evidence, but this challenge cannot be made in a pretrial motion to dismiss an information.[36] Rather, "[t]he government is entitled to marshal and present its evidence at trial and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29."[37]

■ Defendants urge the Court to follow the federal precedent delineated in *United States v. Turkette*[38] that "[t]he existence of a [RICO] enterprise at all times remains a separate element which must be proved by the Government" because "the 'enterprise' . . . is an entity separate and apart from the pattern of activity in which it engages."[39] But, even assuming, *arguendo*, the Court were to do so, the United States Supreme Court has made clear that this does not mean that "the existence of an enterprise may never be inferred from the evidence showing that persons associated with the enterprise engaged in a pattern of racketeering activity[.]"[40] Because the Amended Information contains the "enterprise" element of the charged offense and a sufficient factual orientation to permit Defendants to prepare their defense and invoke double jeopardy, the Court will not dismiss the challenged CICO charges on this ground.[41]

### B. Pattern of criminal activity under CICO.

Defendants also argue that the facts alleged in the Amended Information fail to show Defendants engaged in the requisite "pattern of criminal activity" necessary to impose criminal liability under 14 V.I.C. § 605(a) and 605(d). The parties do not dispute that the facts alleged in the Amended Information show that Defendants engaged in "criminal activity" prohibited under CICO. Rather, the issue is whether the Amended Information contains sufficient facts to show Defendants engaged in a *pattern* of criminal activity. Defendants contend that the Amended Information is inadequate because a pattern of criminal activity

---

[35] *Compare Whyte*, 62 V.I. at 102 (citations omitted).

[36] *Whyte*, 62 V.I. at 102 (citations omitted).

[37] *Id.* (citations omitted).

[38] *United States v. Turkette* 452 U.S. 576, 583, 101 S. Ct. 2524, 2529, 69 L. Ed. 2d 246 (1981).

[39] Def. Sabers' Mot. to Dismiss, p. 5; Def. McKenzie's Mem. of Law, p. 8.

[40] *Boyle*, 556 U.S. at 947 (citing *Turkette*, 452 U.S. at 583).

[41] *Whyte*, 62 V.I. at 101 (citations omitted).

15

under CICO requires acts that "amount to or pose a threat of continued criminal activity."[42] Defendants derive this necessity from the United States Supreme Court's interpretation of "pattern of racketeering activity" under RICO, arguing that federal precedent is applicable because CICO incorporates the United States Supreme Court's "refinement of the RICO . . . pattern requirement."[43] On the other hand, the People object to the use of federal precedent, opining that the "Virgin Islands Legislature has already spoken" on the issue by defining "pattern of criminal activity" in Section 604(j) of CICO with more specificity than its RICO counterpart, 18 U.S.C.S. § 1961(5).[44]

■ The Supreme Court of the Virgin Islands has yet to conduct nuanced statutory interpretation of Section 604(j)'s pattern requirement. In upholding a CICO conviction, the Supreme Court of the Virgin Islands has applied Section 604(j) when defining a CICO pattern, but that case involved a defendant who, while working as an insurance agent, allegedly collected money from numerous customers for the purpose of securing insurance but "never transmitted the funds to the pertinent insurance companies[.]"[45] That case fell squarely within Section 604(j) because each illegal sale to each victim constituted a separate occasion of criminal activity. However, the Amended Information here alleges that the criminal activity only amounted to one sale. Because the Supreme Court of the Virgin Islands has yet to interpret Section 604(j) in this context, the Court must endeavor to determine the meaning of a "pattern of criminal activity" under Section 604(j) of CICO by applying the principles of statutory interpretation.[46]

---

[42] Def. Sabers' Mot. to Dismiss, p. 8; Def. McKenzie's Mem. of Law, p. 12.

[43] Def. McKenzie's Reply, p. 3.

[44] People's Brief, p. 3, cf. 18 U.S.C.S. § 1961(5) (" 'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity. . .") with 14 V.I.C. § 604(j).

[45] See Gumbs v. People of the V.I., 59 V.I. 784, 788-790 (V.I. 2013).

[46] Statutory interpretation is governed by the "Rules of Construction." 1 V.I.C. §§ 41-52. The Supreme Court of the Virgin Islands has described the standard for statutory interpretation, as follows:

"The first step when interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning. If the statutory language is unambiguous and the statutory scheme is coherent and consistent, no further inquiry is needed. In analyzing

■ Section 604(j) begins by stating " '[p]attern of criminal activity' *means* . . . [,]" which denotes that the definition is intended "to be complete and self-contained."[47] Therefore, an information will sufficiently establish a pattern of criminal activity so long as the factual allegations satisfy the express requirements of Section 604(j).[48] The express requirements for establishing a "pattern of criminal activity" under CICO are: (1) "two or more occasions of conduct . . . that"; (2) "constitute criminal activity;" (3) "are related to the affairs of the enterprise;" and (4) "are not isolated; and;" (5) where the "occasions of conduct" occur within the specified time period; (6) one of which "constitute[s] a felony under the Virgin Islands Code."[49] Notably, Section 604(j) does not contain an express "continuity" requirement. Nevertheless, Defendants urge the Court to interpret the CICO pattern like the federal RICO pattern, which requires "continuity plus relationship,"[50] because CICO "is modeled after the federal RICO statute."[51] This argument is unpersuasive.

Defendants are correct that, similar to CICO, 18 U.S.C. § 1962(c) of RICO provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." However, the definition of "pattern of criminal activity" under 14 V.I.C. § 604(j) differs significantly from the definition of a RICO "pattern of racketeering"

---

a statutory scheme, we must give effect to every provision, making sure to avoid interpreting any provision in a manner that would render it — or another provision — wholly superfluous and without an independent meaning or function of its own. But even where a statutory scheme is plain and internally consistent, no statute should be read literally if such a reading is contrary to its objective [and] this Court must consider whether applying the statute's literal language leads to . . . absurd consequences or is otherwise inconsistent with the Legislature's intent."

*In re L.O.F.*, 62 V.I. 655, 661 (V.I. 2015) (internal and other citations omitted).

[47] *Accord Comput. Concepts Profit Sharing Plan v. Brandt*, 310 Or. 706, 719, 801 P.2d 800, 807 (1990) (citations omitted); *People v. Chaussee*, 880 P.2d 749, 757 (Colo. 1994).

[48] *Accord Comput. Concepts*, 801 P.2d at 807-808.

[49] 14 V.I.C. § 604(j).

[50] *See* Colman D. McCarthy, Criminal Relationships: Vertical and Horizontal Relatedness in Criminal RICO, 86 Wash. U. L. Rev. 1493, 1496-1497 (2009).

[51] Def. McKenzie's Mem. of Law, p. 6: Def. Sabers' Mot. to Dismiss, p. 4.

under 18 U.S.C. § 1961(5).[52] As Defendants contend, in *H.J. Inc. v. Northwestern Bell Telephone Co.*,[53] the United States Supreme Court held that "to prove a pattern of racketeering activity [under RICO,] a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity."[54] In reaching this conclusion, the United States Supreme Court first determined that RICO's "pattern of racketeering activity" "places an outer limit on the concept . . . that is broad" because:

> [Although the provision is found in] the section of the statute headed "definitions," 18 U.S.C. § 1961 . . . does not so much define a pattern of racketeering activity as state a minimum necessary condition for the existence of such a pattern. Unlike other provisions in § 1961 that tell us what various concepts used in the Act "mean," 18 U.S.C. § 1961(5) says of the phrase "pattern of racketeering activity" only that it "requires at least two acts of racketeering activity, . . . [that occur within the specified time period]."[55]

From this language, the United States Supreme Court determined that 18 U.S.C. § 1961(5) "concerns only the minimum *number* of predicates necessary to establish a pattern; and it assumes that there is something to a RICO pattern *beyond* simply the number of predicate acts involved."[56] However, RICO "does not identify. . . these additional prerequisites for establishing the existence of a RICO pattern" or contain any text identifying the "forms of relationship or external principles to be used in determining whether racketeering activity falls into a pattern for purposes of [RICO.]"[57] Because of this absence, it was necessary for the United States Supreme Court to elucidate the bounds of a RICO pattern by analyzing RICO's legislative history, which resulted in the United States Supreme Court's ulti-

---

[52] *Rodriguez v. Bureau of Corr.*, 58 V.I. 367, 378 n.2 (V.I. 2013) (declining to follow federal precedent where "the federal habeas statutes in Chapter 153 of Title 28 of the U.S. Code are not similar to the local habeas laws").

[53] *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239, 109 S. Ct. 2893, 2901, 106 L. Ed. 2d 195 (1989).

[54] *Id.*

[55] *Id.* at 237; *see also Sedima v. Imrex Co.*, 473 U.S. 479, 496 n.14, 105 S. Ct. 3275, 3285, 87 L. Ed. 2d 346 (1985).

[56] *H. J. Inc.*, 492 U.S. at 237-238.

[57] *Id.* at 238.

mate conclusion that Congress intended for a RICO pattern to have a "continuity" element in addition to a "relationship" element.[58]

 Unlike the language of RICO, which states what a RICO pattern "requires," the Virgin Islands Legislature explicitly stated what a CICO "pattern of criminal activity means[.]"[59] Further, unlike a RICO pattern, the express language of Section 604(j) unambiguously identifies the "external principals to be used in determining whether [criminal] activity falls into a pattern for purposes of [CICO.]"[60] Consequently, unlike a RICO pattern, which required judicial inquiry to ascertain legislative intent, "no further inquiry" is needed to define a CICO pattern.[61] This interpretation is consistent with the Virgin Islands Legislature's instructions that the provisions of CICO be "liberally construed to achieve its remedial purpose."[62]

 The Court recognizes that one of the express requirements of Section 604(j) is that the "two occasions of conduct . . . are not isolated[,]"[63] which could, at first glance, be construed as adding "a temporal element beyond the express requirements" of Section 604(j).[64] However, when reading Section 604(j) "according to the common and approved usage of the English language,"[65] there is no ambiguity. "Isolated" is defined as "single; exceptional[,]"[66] "occurring alone or once[,]"[67] or "sporadic."[68] Applying this definition to Section 604(j), the plain language clearly denotes that, to establish a CICO pattern, the "two occasions of conduct" must not be lone instances of criminal activity. This speaks to the relationship of the "occasions" of criminal activity to one

---

[58] *Id.* at 237-239.

[59] 14 V.I.C. § 604(j).

[60] *H. J. Inc.*, 492 U.S. at 238.

[61] *In re Joseph*, 65 V.I. 217, 227 (V.I. 2016) (citations omitted).

[62] 14 V.I.C. § 602.

[63] 14 V.I.C. § 604(j)(1)(C).

[64] *Comput. Concepts*, 801 P.2d at 809 n.15.

[65] *Defoe v. Phillip*, 56 V.I. 109, 121 (V.I. 2012) (citing 1 V.I.C. § 42).

[66] Oxford English Dictionary Online, https://en.oxforddictionaries.com/definition/occasion (last visited January 26, 2017).

[67] Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/isolated (last visited January 26, 2017).

[68] *Id.*

another, but not to "continuity" in a temporal sense.[69] Because the terms of Section 604(j) are plain, the Court cannot, "under the pretext of statutory construction, read into the statute that which the [L]egislature has not sought [sic] fit to include."[70] Consequently, "continuity" is not required to establish a "pattern of criminal activity" under CICO.

This interpretation is also consistent with the construction by other state courts of their own "little RICO" statutes that define pattern with more specificity than RICO and, like CICO, expressly state what a pattern "means."[71] Additionally, the Court's conclusion that a temporal "continuity" element is not implied merely because Section 604(j) requires that the predicate offenses "are not isolated" aligns with the United States Supreme Court's conclusion regarding the RICO pattern requirement in *H.J. Inc.*[72] There, the United States Supreme Court considered, Title X of "the Organized Crime Control Act of 1970 (OCCA), . . . of which RICO formed Title IX[,]" that "provided for enhanced sentences where, among other things, the defendant had committed a prior felony as part of a pattern of criminal conduct or in furtherance of a conspiracy to engage in a *pattern* of criminal conduct."[73] According to the United States Supreme Court, "Congress defined Title X's pattern requirement solely in terms of the *relationship* of the defendant's criminal acts one to another" because the statutory language explicitly provided that "[c]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and *are not isolated* events."[74] Because RICO did not contain such an exacting definition, the United States Supreme Court was able to consider legislative history and conclude that a RICO pattern requires both a "relationship" element and a "continuity"

---

[69] *See Comput. Concepts*, 801 P.2d at 808.

[70] *Joseph*, 65 V.I. at 229.

[71] *See, e.g., Comput. Concepts*, 801 P.2d at 808-809; *Chaussee*, 880 P.2d at 757; *see also* JOHN E. FLOYD, RICO STATE BY STATE: A GUIDE TO LITIGATION UNDER THE STATE RACKETEERING STATUTES 31 (1998).

[72] *H. J. Inc.*, 492 U.S. at 239-240.

[73] *Id.* at 239 (citing Pub. L. 91-452, 84 Stat. 922) (emphasis added) (internal citation omitted).

[74] *Id.* at 240 (emphasis added).

element.[75] Here, Section 604(j) contains language that is similar to the pattern requirement under Title X, evincing that the prerequisites for establishing a CICO pattern pertain to the relatedness of the defendant's criminal activities, but not to a "threat of continuing activity."

 Having concluded that a CICO pattern does not require "continuity," the Court finds that the Amended Information is adequate. As discussed, the Amended Information is sufficient as to the "enterprise" element of the challenged CICO charges, and, the facts alleged in the Amended Information also describe conduct by Defendant that amounts to at least two of the following offenses: forgery, obtaining money by false pretenses, conversion of government property, conspiracy, recording false documents, making fraudulent claims upon the Government, larceny, and embezzlement,[76] which fall within the definition of "criminal activity" under CICO.[77] Additionally, the Amended Information also satisfies the remaining prerequisites of a CICO pattern, namely that the "occasions of" criminal activity "relate to the affairs of the enterprise" and "are not isolated," because the factual allegations indicate that Defendants' acts related to the purported "association-in-fact" enterprise involving Defendant Charleswell in his role at the OLG and that the acts were not lone instances of criminal activity, but, instead, related to the overriding purpose of the enterprise, which was to manipulate the bidding process at the tax auction of the Property.[78]

Accepting the factual allegations as true, the Court finds that the language in the Amended Information tracks the language of the CICO pattern requirement and is, therefore, sufficient. As a result, the facts alleged adequately apprise Defendants of what they must be prepared to meet with respect to the CICO pattern requirement and invoke double

---

[75] *See id.*

[76] People's September 1, 2016, Amended Information.

[77] 14 V.I.C. § 604(e) defines "criminal activity," in pertinent part, as "engaging in . . . [or] attempting to engage in" conduct prohibited under a litany of Virgin Islands Code provisions, as well as federal criminal offenses constituting felonies. 14 V.I.C. § 604(e). Additionally, 14 V.I.C. § 604(j)(2)(C) requires "at least one of the occasions of conduct constitute[ ] a felony under the Virgin Islands Code. . . ." Defendants' alleged conduct satisfies both statutes.

[78] Though not raised by Defendants, the requirement that Defendants acted within the specified time period is also met, as the Amended Information alleges the tax-auction of the Property took place on August 30, 2016. *See* 14 V.I.C. § 604(j)(2)(A)-(B) (requiring that "at least one of the occasions of conduct occurred after November 9, 1990; [and] the last of the occasions of conduct occurred within five years of the filing of the action . . . .").

jeopardy in the event subsequent actions are brought against Defendants for similar offenses. Consequently, the Court finds the Amended Information sufficiently charged each element of the crime, namely, that Defendants violated 14 V.I.C. § 605(d) by conspiring to violate 14 § 605(a) of CICO.

## CONCLUSION

For the foregoing reasons, Defendant McKenzie's and Defendant Sabers' Motions to Dismiss will be denied because the Amended Information contains sufficient factual allegations to satisfy the "enterprise" and "pattern" elements under CICO.

An Order consistent with this Memorandum Opinion shall follow.